UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
ZURAB SAAMISHVILI,                                          :
                                                            :
                   Petitioner,                             :
                                                            :
            - against -                                  :
                                                            :
BRYAN FLANAGAN, *Acting Field Office*                       :  **MEMORANDUM DECISION AND**
*Director, U.S. Immigration and Customs*                    :  **ORDER**
*Enforcement*; JUDITH ALMODOVAR,                            :
*Acting Director, Enforcement and Removal*                  :  25-cv-6178 (BMC)
*Operations, U.S. Immigration and Customs*                  :
*Enforcement*; KRISTI NOEM, *Secretary of*                  :
*the U.S. Department of Homeland Security*;                 :
and PAMELA BONDI, *U.S. Attorney*                           :
*General*,                                                  :
                                                            :
                   Respondents.                            :
----------------------------------------------------------- X

**COGAN**, District Judge.

Petitioner, a native and citizen of the country of Georgia, seeks a writ of habeas corpus ordering his release from Immigration and Customs Enforcement ("ICE") detention under 22 U.S.C. § 2241. Petitioner unlawfully crossed the Arizona-Mexico border in 2021, and ICE apprehended him the same day. ICE did not keep him in physical custody. Instead, it issued a Notice to Appear ("NTA") for removal proceedings, and let him go.

Since then, petitioner was required to periodically check in with ICE, sometimes in person, and sometimes over the phone or email. If petitioner had failed to contact immigration officials when he was required to, he could been returned to physical custody. See 8 C.F.R. § 241.4(l)(1) ("Any alien . . . who violates the conditions of release may be returned to custody.").

A few years later, under a new administration, at his last in-person check-in, ICE took him back into custody and fast-tracked his removal proceedings, and he has since been ordered removed. This petition followed. For the reasons below, the Court denies the petition.

**LEGAL STANDARD**

Habeas corpus "stands as a safeguard against imprisonment of those held in violation of the law." Harrington v. Richter, 562 U.S. 86, 91 (2011); see also Ozturk v. Hyde, 136 F.4th 382, 393 (2d Cir. 2025). The Court may issue a writ under Section 2241 "whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" Wang v. Ashcroft, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." Lopez v. Sessions, No. 18-cv-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing Demore v. Kim, 538 U.S. 510, 516-17 (2003)).

"How much process someone is due depends on circumstance, and immigration law is one sphere where that amount is minimal." Singh v. Quarantillo, No. 25-cv-6392, 2026 WL 32759, at *3 n.3 (E.D.N.Y. Jan. 6, 2026). "Parties claiming denial of due process in immigration cases must, in order to prevail, 'allege some cognizable prejudice fairly attributable to the challenged process.'" Garcia-Villeda v. Mukasey, 531 F.3d 141, 149 (2d Cir. 2008) (quoting Lattab v. Ashcroft, 384 F.3d 8, 19 (1st Cir. 2004)).

**DISCUSSION**

Petitioner challenges his ongoing custody without a bond hearing. The Government contends his custody is proper under 8 U.S.C. § 1225(b)(2)(A). It is undisputed that aliens subject to Section 1225(b)(2)(A) are not entitled to a bond hearing. The only question therefore is whether petitioner is covered by that statute.

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, Div. C, 110 Stat. 3009, 3009-546, redefined the immigration code in many respects. Relevant here, it did away with the distinction between "exclusion" and "deportation" proceedings. Generally speaking, exclusion proceedings applied to aliens encountered at the border and deportation proceedings applied to aliens later encountered within the border. See Ibragimov v. Gonzales, 476 F.3d 125, 130 n.11 (2d Cir. 2007) ("'Deportation' proceedings were provided to aliens who had formally 'entered' the United States, while 'exclusion' proceedings were provided to aliens who were seeking entry to the United States and therefore were constructively deemed to be at the border.").

Deportation proceedings afforded aliens "a number of substantive rights not available to the alien who is denied admission in an exclusion proceeding." Landon v. Plasencia, 459 U.S. 21, 26 (1982). The idea behind removing the exclusion-deportation distinction is somewhat intuitive: an alien that enters unlawfully and evades apprehension for a long period of time should not be in a more favorable position than an alien that enters unlawfully but is apprehended immediately. Post-IIRIRA, "both aliens arriving at the border and aliens already present in the United States without inspection are deemed 'applicants for admission,' . . . who must 'be inspected by immigration officers' to determine their admissibility." Cruz-Miguel v. Holder, 650 F.3d 189, 197 (2d Cir. 2011).

The statute at issue states, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for [removal] proceeding[s]." 8 U.S.C. § 1225(b)(2)(A). As the Government puts it, "§ 1225(b)(2)'s mandatory detention regime applies to all aliens who entered the United States without inspection." See Matter of

Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025) ("[A]liens who enter the United States without inspection or admission are 'applicants for admission' under [] 8 U.S.C. § 1225(a)(1), and subject to the inspection, detention, and removal procedures of [] 8 U.S.C. § 1225(b).").[1]

The Court agrees, and notes that this is a natural reading, consistent with IIRIRA's purpose of removing the exclusion-deportation distinction. See Buenrostro-Mendez v. Bondi, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026). When petitioner first crossed the Arizona border, he was certainly an "applicant for admission" covered by Section 1225(b)(2)(A). And indeed, ICE took him into custody, as was mandatory. But that does not end the inquiry because what matters is whether petitioner was still covered by Section 1225(b)(2)(A) at the time ICE took him back into physical custody in 2025.

The phrase "shall be detained" is quite clear, evoking a Congressional intent to strip the Executive of any discretion to enforce the statute's mandate. See Jennings v. Rodriguez, 583 U.S. 281, 297 (2018). The question in Jennings was whether there was an implicit six-month time limit for physical custody under Section 1225(b)(2), after which the alien had to be afforded a bond hearing under Section 1226(a). In finding that the statute unambiguously did not, Jennings read "detention" under Section 1225(b)(2)(A) to mean physical custody. See id. at 307 ("'Detained' does not mean 'released on bond'").

The problem is that "DHS has never had 'sufficient detention capacity to maintain in custody every single person described in section 1225.'" See Biden v. Texas, 597 U.S. 785, 792 (2022). Thus, if Jennings is read to hold that "detention" under Section 1225(b)(2)(A)

---

[1] The Government refers to Yajure Hurtado as a "precedential decision." Ostensibly, the Government is referring to the binding effect of BIA decisions on ICE as an agency, see 8 C.F.R. § 1003.1(g), and not this Court. "While the BIA decision might provide helpful guidance, this Court is not bound by it." Kulwinder Singh v. Maldonado, No. 26-cv-00019, 2026 WL 233216, at *8 (E.D.N.Y. Jan. 29, 2026) (citing Loper Bright Enters. v. Raimondo, 603 U.S. 369, 385-86, 400-01 (2024)).

necessarily means physical custody, the Executive is seemingly faced with an impossible choice between inhumanely overcrowding DHS facilities,[2] or ignoring Congress.

But the <u>Jennings</u> Court's discussion as to what "detention" meant was *dicta*, intended only to showcase the infirmity of the dissent's reading of the statute. See <u>Jennings</u>, 583 U.S. at 311 ("[E]ven if we were to accept the dissent's interpretation and hold that 'detained' aliens in the 'custody' of the Government include aliens released on bond, that would *still* not justify the dissent's proposed resolution of this case."). In other words, J<u>ennings</u> left open whether "detention" under Section 1225(b)(2)(A) always requires physical custody, or if some other restriction of liberty could satisfy the purpose of the mandatory detention. See <u>id.</u> at 318 (Thomas, J., concurring) ("This detention . . . is meant to ensure that the Government can ultimately remove [the alien].").

Reading Section 1225(b)(2)(A) to require a certain form of detention, without the statute stating so, would run afoul of the "narrow standard of review of decisions made by [] Congress or the President in the area of immigration and naturalization." See <u>Mathews v. Diaz</u>, 426 U.S. 67, 82 (1976); <u>see</u> <u>also</u> <u>Jama v. Immigr. & Customs Enf't</u>, 543 U.S. 335, 348 (2005) ("To infer an absolute rule . . . where Congress has not clearly set it forth would run counter to our customary policy of deference to the President in matters of foreign affairs."); <u>United States ex rel. Knauff v. Shaughnessy</u>, 338 U.S. 537, 542 (1950) ("The exclusion of aliens is a fundamental act of sovereignty . . . inherent in the executive power to control the foreign affairs of the nation").

---

[2] Although overcrowding by itself is not an Eighth Amendment violation, <u>see</u> <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981), it is often the breeding ground. See <u>Darnell v. Pineiro</u>, 849 F.3d 17, 32 (2d Cir. 2017) ("An overcrowded cell . . . may exacerbate the effect of unsanitary conditions[;] poor ventilation may be particularly harmful when combined with an overflowing toilet [and] Inadequate nutrition may be compounded by infestation.").

Analogizing to the statute governing conditions on pretrial release of federal criminal defendants, 18 U.S.C. § 3142(c)(1)(B), the dissent in Jennings postulated that "detention" under Section 1225(b)(2)(A) includes bond, travel restrictions, curfew, periodic check-ins, and returning to custody at specified hours. See id. at 345 (Breyer, J., dissenting). The dissent went wrong only by suggesting that these were necessary conditions of detention under Section 1225(b)(2)(A), rather than sufficient conditions. In other words, the Executive's obligation to detain aliens subject to Section 1225(b)(2)(A) could be satisfied by bond, check-ins, etc., but it could also be satisfied by physical custody, if the Executive chose to do so.

Since his unlawful entry, petitioner has been, and continues to be, subject to the mandatory detention requirement of Section 1225(b)(2)(A). Between his unlawful entry in 2021 and October 2025, the Executive enforced that requirement with a velvet glove; thereafter, with an iron fist.[3] The former was no doubt preferable to petitioner, but was by no means required by the Due Process Clause. See Singh, 2026 WL 32759, at *4 ("Due process is not a results-based function.").[4]

---

[3] In Biden, the Supreme Court left open whether "the detention requirement in [S]ection 1225(b)(2)(A) is subject to principles of law enforcement discretion." 597 U.S. at 803 n.5. That question is not implicated here because discretion to enforce (*i.e.*, to enforce or not to enforce) is distinct from discretion of how to enforce (*i.e.*, the method of enforcement).

[4] In a factually identical case, the court deemed ICE's prior release of the petitioner to constitute parole under Section 1182(d)(5)(A), and therefore ICE taking him back into physical custody, without the required parole-revocation assessment, violated the petitioner's due process rights. See Diallo v. Maldonado, No. 25-cv-5740, 2025 WL 3158295, at *5 (E.D.N.Y. Nov. 12, 2025).

This Court respectfully disagrees with Diallo. Section 1182(d)(5)(A) allows for parole "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit," which strikes the Court as a high bar. True, Section 1182(d)(5)(A) is "the sole statutory authority under which a noncitizen subject to § 1225(b)(2)(A) may be paroled," see Savane v. Francis, 801 F. Supp. 3d 483, 491 (S.D.N.Y. 2025), so deeming any release from physical custody under Section 1225(b)(2)(A) as constituting parole under Section 1182(d)(5)(A) makes some sense. But petitioner was not paroled, and neither administration's Executive evinced an intent to have done so. The Court believes it treads too far to constructively parole petitioner under Section 1182(d)(5)(A) when a more plausible, less drastic explanation for his release and return to physical custody exists.

## CONCLUSION

The petition for a writ of habeas corpus is denied.

**SO ORDERED.**

Dated: Brooklyn, New York
       February 11, 2026

*Brian M. Cogan*
U.S.D.J.